GROSS, C.J.
 

 Florida Insurance Guaranty Association, Inc. (“FIGA”) timely appeals a non-final order denying its request to compel an appraisal under an insurance policy. We affirm, holding that the insolvent insurance company, FIGA’s predecessor, failed to comply with the notice requirement of section 627.7015(2), Florida Statutes (2005), so that the insured was not required to submit to the loss appraisal process.
 

 On October 15, 2005, Southern Family Insurance Company issued an insurance policy to Shadow Wood Condominium Association that included coverage for hurri
 
 *612
 
 cane damage. On October 24, 2005, Hurricane Wilma struck South Florida and Shadow Wood sustained damage to covered property. Shadow Wood timely submitted a claim for the damages to Southern Family.
 

 In 2006, Southern Family became insolvent, thus triggering FIGA’s obligation to provide a mechanism for the payment of covered claims.
 
 See
 
 §§ 631.50-.70, Fla. Stat. (2005) (the “Florida Insurance Guaranty Association Act”). At the time of its insolvency, Southern Family failed to make any payments to Shadow Wood for covered losses. In March, 2007, FIGA paid $308,690.43 to Shadow Wood; this payment was based on FIGA’s own determination of the value of the damages at that time. Shadow Wood did not file a sworn proof of loss or execute a release as a prerequisite to payment.
 

 In March, 2008, Shadow Wood retained a lawyer to pursue further payments under the Southern Family policy. In April, 2008, Shadow Wood filed an action against FIGA for breach of the policy. One of FIGA’s 39 affirmative defenses claimed that “FIGA has demanded [an] Appraisal and this action should be stayed until the Appraisal process is completed.” FIGA’s first demand for an appraisal came after its answer and affirmative defenses were filed. On June 19, 2008, FIGA filed a motion to compel the appraisal process and to stay the action until it was completed. FIGA did not “wholly dispute coverage,” only the “amount of covered loss.” The trial court denied FIGA’s motion on January 21, 2009.
 

 This case turns on the applicability of section 627.7015, Florida Statutes (2005), to the terms of the Southern Family policy.
 
 [1]
 
 Section E.2. of the Coverage Part of the policy applies this statutory appraisal “condition”:
 

 2. Appraisal
 

 If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
 

 a. Pay its chosen appraiser; and
 

 b. Bear the other expenses of the appraisal and umpire equally.
 

 If there is an appraisal, we will still retain our right to deny the claim.
 

 A separate section of “Commercial Property Conditions” states that “[n]o one may bring a legal action against [the insurer] under this Coverage Part unless: 1. There has been full compliance with all of the terms of this Coverage Part[.]”
 

 Two things are notable. The appraisal is not binding and the policy places the additional expense of the appraisal process upon the insured as a condition of filing a lawsuit.
 

 It was this imposition of additional costs on an insured that the legislature sought to address in section 627.7015. Subsection (1) sets forth the purpose of the statute:
 

 
 *613
 
 There is a particular need for an informal, nonthreatening forum for helping parties who elect this procedure to resolve their claims disputes
 
 because most homeowner’s and commercial residential insurance policies obligate insureds to participate in a potentially expensive and time-consuming adversarial appraisal process prior to litigation.
 
 The procedure set forth in this section is designed to bring the parties together for a mediated claims settlement conference without any of the trappings or drawbacks of an adversarial process.
 

 § 627.7015(1), Fla. Stat. (2005) (emphasis added). Subsection 627.7015(2) requires the insurer to “notify all first-party claimants of their right to participate in the mediation program under” section 627.7015 “[a]t the time a first-party claim within the scope of this section is filed.” § 627.7015(2), Fla. Stat. (2005). If an insurer fails to comply with the section 627.7015(2) notice requirement, then
 

 the insured shall not be required to submit to or participate in any contractual loss appraisal process of the property loss damage as a precondition to legal action for breach of contract against the insurer for its failure to pay the policyholder’s claims covered by the policy.
 

 § 627.7015(7), Fla. Stat. (2005). The purpose of the statute was to use the mediation process to encourage an inexpensive and speedy resolution of insurance claims “prior to commencing the appraisal process, or commencing litigation.” § 627.7015(1), Fla. Stat. (2005). Because the statute applies to consumer related claims — to claims arising out of “homeowner’s and commercial residential insurance policies” — the statute requires the insurer to notify the consumer of the availability of the mediation.
 

 Southern Family did not give the section 627.7015 notice at the time Shadow Wood filed its claim shortly after Hurricane Wilma. FIGA is bound by Southern Family’s failure to give the section 627.7015 notice, so that section 627.7015(7) applies.
 
 [2]
 
 Under section 631.57(l)(b), Florida Statutes (2005), FIGA is “deemed the insurer to the extent of its obligation on the covered claims, and, to such extent, shall have all rights, duties, defenses, and obligations of the insolvent insurer as if the insurer had not become insolvent.” Reading section 631.57(l)(b) together with section 627.7015, it does not appear that the legislature intended to excuse FIGA from the notice requirement. This makes sense, because, in cases where an insurer’s insolvency brings FIGA into the picture, there will typically have been a substantial delay since the insured experienced a loss, so that elimination of a non-binding appraisal process as a “precondition to legal action” would avoid further cost and delay. § 627.7015(7), Fla. Stat. (2005).
 

 FIGA attempts to avoid the application of section 627.7015 by citing to a line of cases where courts have refused to hold FIGA liable for the misdeeds of a defunct insurer, beyond those arising out of an insurance policy. Thus, in
 
 Williams v. Florida Insurance Guaranty Association, Inc.,
 
 549 So.2d 253, 254 (Fla. 5th DCA 1989), the fifth district refused to hold FIGA responsible for the negligence of an insurance agent for failing to advise the insured to obtain a different policy than the one actually issued.
 
 Williams
 
 is inapplicable here, since the application of section 627.7015 does not impose liability on FIGA, beyond the coverage of the policy,
 
 *614
 
 for the misconduct of Southern Family.
 
 See Fernandez v. Fla. Ins. Guar. Ass’n, Inc.,
 
 383 So.2d 974, 975 (Fla. 3d DCA 1980) (observing that the legislature, in creating FIGA, “was careful to restrict its potential liability ... conceiming its vicarious responsibility for the acts of the companies it succeeds”). Rather, the statute sets up a procedural mechanism affecting access to the court system.
 

 Finally, we reject FIGA’s contention that the appraisal process here is not a “precondition to legal action” within the meaning of subsection 627.7015(7). FIGA requested a stay in the circuit court. The basis for the stay is the policy language that requires an insured to comply with policy conditions to “bring a legal action” against the insurer. FIGA sought to stay the case until the contractual loss appraisal process was completed. In the circuit court, FIGA thus treated the appraisal requirement as a “precondition to legal action,” which meant that the action could not continue until the precondition was satisfied.
 
 See also Fla. Ins. Guar. Ass’n, Inc. v. Devon Neighborhood Ass’n, Inc.,
 
 — So.3d - (Fla. 4th DCA 2009).
 

 Because FIGA is bound by Southern Family’s failure to notify Shadow Wood of the availability of mediation, we hold that Shadow Wood was not required to submit to the loss appraisal process sought by FIGA.
 

 Affirmed.
 

 DAMOORGIAN and GERBER, JJ„ concur.
 

 [1]
 

 . We agree with FIGA that its request for an appraisal for the first time in the affirmative defense did not amount to a waiver of its right to an appraisal.
 
 See Fla. Ins. Guar. Ass'n v. Castilla,
 
 18 So.3d 703, 705 (Fla. 4th DCA 2009);
 
 Wilson v. Federated Nat'l Ins. Co.,
 
 969 So.2d 1133 (Fla. 2d DCA 2007).
 

 [2]
 

 . We also note that FIGA failed to give the section 627.7015 notice when it took over the claim from Southern Family. We do not therefore decide whether such a notice would have complied with the statute.